**William GATTER and Marie Parrott Gatter, Plaintiffs,**

v.

**Richard ZAPPILE, et al., Defendants.**

**No. CIV. A. 99–2320.**

United States District Court,
E.D. Pennsylvania.

Oct. 7, 1999.

See also, 54 F.Supp.2d 454.

Joan Gaughan Atlas, Koral, Kahn & Koral, PC, Philadelphia, PA, for Plaintiffs.

Peter D. Winebrake, City of Philadelphia Law Dept., Philadelphia, PA, for Richard Zappile, Defendant.

Linda L. Shafer, James G. Sheehan, U.S. Atty's Office, Philadelphia, PA, for James Danbach, James Williamson, John McGrath, Cynthia O'Leary, City of Philadelphia, defendants.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

This suit arises out of the prosecution of William Gatter, a former Philadelphia police sergeant, for perjury before a grand jury. Gatter was later acquitted of the charge. The complaint alleges causes of action against remaining defendants James Danbach,[1] Special F.B.I. Agent, and James Williamson, Special Deputy Marshal, for violations of Gatter's civil rights, malicious

---

1. The correct spelling of the defendant's last name appears to be "Dambach." However, because the caption has not been amended, the court will use the spelling "Danbach."

prosecution, false arrest, infliction of emotional distress, abuse of process, conspiracy, and loss of consortium. Before the court now is defendants' motion for summary judgment.

## I.  Background[2]

Danbach and Williamson were members of the Joint Task Force on Police Corruption and were involved in the investigation of a Philadelphia police officer, Michael Vassallo. One of the matters under investigation was the allegation that Vassallo had beaten an arrestee, Lawrence Jones. This allegation was made by Jones and two police officers, John McGrath and Cynthia O'Leary.[3] According to the officers, they reported the incident to Gatter, who was the supervisor at the site of the arrest. All three officers testified regarding this alleged assault in 1997 before the grand jury investigating Vassallo. At the time of his appearance before the grand jury, Gatter was not a target of Danbach and Williamson's investigation. Gatter's testimony, which was that he could not recall receiving any complaint regarding Vassallo, was at odds with that of McGrath and O'Leary, and this difference formed the basis of a perjury indictment against

Gatter. After proceeding to trial, Gatter was acquitted of all charges.

Gatter's suit is predicated upon his theory that Danbach, Williamson, and other members of the Joint Task Force and/or Internal Affairs pursued the investigation as part of a deliberate campaign against Vassallo. *See* Compl. ¶ 25. Gatter alleges that Danbach and Williamson knew or should have known that McGrath and O'Leary were lying because their testimony regarding the assault was not supported by police records. *See* Pl. Opp. Mem. at 4.[4] According to Gatter, his prosecution for perjury was punishment for his refusal to give false testimony implicating Vassallo before the grand jury. *See* Compl. ¶ 26.

## II.  Discussion[5]

As is discussed below, none of the plaintiffs' causes of action survive summary judgment.

### A.  Malicious Prosecution and False Arrest

■ Gatter's malicious prosecution and false arrest claims under both state law and section 1983[6] cannot stand because he has not produced evidence suffi-

---

**2.** All facts are undisputed unless otherwise indicated. Where disputed, Gatter's allegations are taken as true and all inferences are resolved in his favor.

**3.** McGrath and O'Leary were also defendants in this suit. Additional members of the Philadelphia Police Department named as defendants were Deputy Commissioner Richard Zappile, and Aloysius Martin and John Norris of Internal Affairs. McGarth and O'Leary were dismissed from the suit by this court because Gatter's complaint against them stemmed solely from their privileged grand jury testimony. *See* Memorandum and Order of July 2, 1999. The parties entered into stipulations dismissing the other Philadelphia Police Department defendants. *See* Stipulation and Orders of July 16, 1999 and September 8, 1999.

**4.** Plaintiffs' memorandum of law in opposition to the summary judgment motion is not numbered. The page reference is from numbering used by the court.

**5.** Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden of showing an absence of a genuine issue of material fact is initially on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the non-moving party may not rest on its pleadings, but bears the burden to "make a showing sufficient to establish the existence of every element essential to [the] case, based on the affidavits or by depositions and admissions on file." *See Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992).

**6.** The court presumes that plaintiffs' civil rights claims arise under 42 U.S.C. § 1983, although the complaint does not specifically say so. The civil rights claims appear to be

cient for a reasonable jury to conclude that the perjury prosecution against him lacked probable cause. His malicious prosecution claims also fail because he cannot show that Danbach and Williamson initiated the proceedings against him.

### 1. Failure to Show Lack of Probable Cause

Probable cause is a necessary element for Gatter's malicious prosecution and false arrest claims. In order to sustain a claim of malicious prosecution, Gatter must show that the defendants (1) initiated the proceedings against him (2) without probable cause and (3) with malice and (4) that the proceedings terminated in his favor. *See Cosmas v. Bloomingdales Bros., Inc.,* 442 Pa.Super. 476, 660 A.2d 83, 85 (1995); *Hilfirty,* 91 F.3d at 579 (applying the elements of the Pennsylvania common law tort in a section 1983 malicious prosecution claim). Similarly, to prevail on his false arrest allegations, Gatter must show that the defendants lacked probable cause. *See Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994) (noting that a false arrest claim is defeated if there was probable cause to make the arrest); *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (requiring a showing that the police lacked probable cause in order for the plaintiffs to prevail on their section 1983 false arrest claim).

While the existence of probable cause is generally a jury question, it may be appropriate for summary judgment where "the uncontroverted facts could not lead a reasonable person to find that probable cause was lacking." *Telepo v. Palmer Township,* 40 F.Supp.2d 596, 611 (E.D.Pa. 1999); *accord Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir. 1984) (holding that a probable cause determination is appropriate for summary judgment where there are no genuine issues of material fact and no credibility issues). A showing of probable cause requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." *Lippay v. Christos,* 996 F.2d 1490, 1502 (3d Cir.1993); *accord Amicone v. Shoaf,* 423 Pa.Super. 281, 620 A.2d 1222, 1224 (1993). A grand jury indictment is affirmative evidence of probable cause. *See Rose v. Bartle,* 871 F.2d 331, 353 (3d Cir.1989) (noting that under both common law and section 1983 claims for malicious prosecution, a grand jury indictment constitutes prima facie evidence of probable cause which may be rebutted by evidence that it was procured by corrupt means); *see also Kalina v. Fletcher,* 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (noting that a grand jury indictment satisfies the Fourth Amendment's requirement that an arrest warrant must be based on probable cause). *But see Montgomery v. DeSimone,* 159 F.3d 120, 125 (3d. Cir.1998) (rejecting the Restatement and common law rule that a conviction, subsequently overturned, raises a rebuttal presumption of probable cause in section 1983 malicious prosecution actions).

---

based on allegations of false arrest and malicious prosecution; thus, the court treats these claims as allegations of a violation of Gatter's rights under the Fourth Amendment. *See Albright v. Oliver,* 510 U.S. 266, 271–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (holding that there is no Fourteenth Amendment substantive due process right to be free from malicious prosecution and suggesting that such a cause of action might lie under the Fourth Amendment); *Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.1996) (allowing a malicious prosecution claim to proceed under § 1983). While the Third Circuit has held that a plaintiff must have been "seized" in order to proceed with a malicious prosecution claim under section 1983, it has set a very low threshold for a finding of seizure. *See Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3d Cir.1998) (holding that post-indictment restrictions on the plaintiff, such as requiring him to post a bond, attend all court hearings, contact Pre-trial Services on a weekly basis, and prohibiting him from traveling outside of New Jersey constituted seizure for the purpose of a section 1983 malicious prosecution claim). Gatter's post-indictment restrictions, which included posting a bond, attending all court hearings, and reporting to Pre-trial Services, qualify as a seizure for the purposes of his section 1983 Fourth Amendment claims.

■ The evidence before the court could not lead a reasonable juror to conclude that the investigation of Gatter lacked probable cause. His testimony before the grand jury regarding Vassallo conflicted with that of McGrath and O'Leary. Gatter testified before the grand jury that he did not recall receiving a complaint from McGrath and O'Leary regarding Vassallo, but that if he had received such a complaint, he would have remembered it. *See* Def. Ex. 8 at 14–15 (Grand Jury Test. of Gatter). McGrath and O'Leary, on the other hand, each testified that they complained to Gatter regarding Vassallo's assault on Jones. *See* Def. Ex. 5 at 17–18 (Grand Jury Test. of McGrath); Def. Ex. 6 at 11–12 (Grand Jury Test. of O'Leary). Subsequent to and based solely upon Gatter's testimony, the U.S. Attorney's Office decided to pursue an indictment against him. *See* Def. Ex. 4 (Aff. of Anthony Wzorek, Ass't U.S. Att'y). The contrast between Gatter's testimony and that of McGrath and O'Leary is sufficient for a reasonable person to conclude that there was probable cause to believe that Gatter had knowingly made a materially false declaration. *See* 18 U.S.C. § 1623. The grand jury's subsequent indictment of Gatter for perjury is also evidence of this probable cause.

In response, Gatter alleges that Danbach and Williamson should have known that McGrath and O'Leary were lying and that the defendants ignored information suggesting that the officers were not credible. *See* Def. Ex. 3 at 99–103 (Dep. of Gatter); Pl. Opp. Mem. at 7. According to Gatter, McGrath and O'Leary's story regarding the assault was inconsistent with documentary evidence, thus undermining the officers' credibility. For example, the officers testified that they did not transport Jones to the station house, *see* Def. Ex. 5 at 18; Def Ex. 6 at 12, but police

records indicate that they did transport him. *See* Def. Ex. 3 at 48. Gatter also alleges that, according to police records, Jones showed no signs of a beating when he was processed after his arrest. *See id.* at 45–49. Because Danbach and Williamson's investigation was inadequate, Gatter argues that the grand jury's indictment is also suspect.

■ Even accepting Gatter's assertions, they are not sufficient to show that there was not probable cause to proceed against him on the perjury charge. When confronted by conflicting testimony regarding an event, a reasonable person could conclude that one of the versions is knowingly false. The documentary evidence Gatter advances might, in a criminal trial, cast doubt on whether Gatter's alleged perjury could be proved beyond a reasonable doubt. However, the burden of proof for probable cause is lower. *See e.g., Telepo,* 40 F.Supp.2d at 611 (noting that probable cause does not require the police to have evidence beyond a reasonable doubt). Given that McGrath and O'Leary's testimony was consistent with each other's, it is reasonable to conclude that their version of events on the night Jones was arrested was truthful and, therefore, a basis for probable cause to believe that Gatter was the one who was lying. Put another way, while Gatter's evidence suggests that the defendants may have pursued their investigation into his alleged perjury with less than full vigor, he has not shown that his indictment was procured by any corrupt means that would rebut this strong showing of probable cause. Gatter's malicious prosecution and false arrest claims thus fail.[7]

### 2. Failure to Show Defendants Initiated the Prosecution

■ Gatter also cannot show that Danbach and Williamson initiated the pro-

---

7. Although not raised by the defendants, Danbach and Williamson have the additional defense of qualified immunity. Police officers and other government officials have qualified immunity from suit under section 1983 so long as " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997) (quoting *Harlow v.*

ceedings against him, another element necessary to sustain his malicious prosecution claim. Generally, it is the prosecutor, not the police officer, who is responsible for initiating a proceeding against a defendant. *See Albright,* 510 U.S. at 279 n. 5, 114 S.Ct. 807 (Ginsburg, J. concurring). An officer may, however, be considered to have initiated a criminal proceeding if he or she "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Merrero v. Micewski,* No. Civ. A. 96–8534, 1998 WL 414724, at * 6 (E.D.Pa. July 22, 1998) (citations omitted); *accord Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir.1996). Here, Danbach and Williamson had no input into the decision to prosecute Gatter: the U.S. Attorney's Office decided to seek the indictment based solely on Gatter's testimony before the grand jury.[8] *See* Def. Ex. 4. While Gatter alleges the defendants should have known that McGrath and O'Leary were lying, as previously discussed, Gatter's evidence is not sufficient for a reasonable person to conclude that the officers' testimony was untruthful. Gatter's claim for malicious prosecution fails because he also cannot establish that the defendants initiated the proceedings against him.

## B. Remaining Claims

### 1. Intentional Infliction of Emotional Distress

■ The intentional infliction of emotional distress claim is defeated on summary judgment because Gatter has not produced evidence sufficient for a jury finding in his favor on this cause of action. In Pennsylvania, the standard for intentional infliction of emotional distress is extremely high; the alleged conduct must be extreme and outrageous. *See Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 177 (1996) (relying upon the Restatement (Second) of Torts § 46 in so holding).

■ Gatter's evidence does not support his theory regarding the defendants' actions. His infliction of emotional harm claim rests on his theory that Danbach and Williamson vindictively pursued an investigation against Vassallo even though they knew the allegations against him were false, and that they punished Gatter by prosecuting him for perjury because he would not cooperate with their investigation. However, even if Danbach and Williamson viewed Gatter as uncooperative, they did not make or even participate in the decision to indict him, and could not, therefore, have used the prosecution to punish him.

### 2. Abuse of Process and Conspiracy

Gatter has conceded that the abuse of process and conspiracy claims cannot withstand summary judgment and, therefore, they are dismissed.

### 3. Loss of Consortium

■ Marie Parrott Gatter's loss of consortium claim likewise cannot proceed

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Because Danbach and Williamson had probable cause to proceed against Gatter, they did not violate Gatter's rights under the Fourth Amendment and are immune from suit from charges stemming from violations of that Amendment. *See Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir. 1989) (noting that the standard for defeating a qualified immunity defense for a Fourth Amendment section 1983 claim is that no reasonable competent police officer would have concluded that probable cause existed).

8. Gatter argues that Williamson's statement that he and Danbach reviewed the draft of the indictment "for any errors or omissions" constitutes evidence that they had input into the decision to indict. *See* Def. Ex. 1 at 33 (Dep. of Williamson). However, a fuller reading of Williamson's deposition testimony reveals that their role was limited to that of factgatherers for the U.S. Attorney's Office. *See id.* at 33–38.

since it is dependent on Gatter's substantive claims, none of which survive summary judgment. *See Schroeder v. Ear, Nose & Throat Assoc. of Lehigh Valley, Inc.*, 383 Pa.Super. 440, 557 A.2d 21, 22 (1989) (holding loss of consortium claim is derivative of spouse's substantive claim).

## III. Conclusion

In sum, Gatter has simply not met his burden on summary judgment of demonstrating that a reasonable person would have found that there was no probable cause to proceed against him on charges of perjury or that Danbach and Williamson initiated the prosecution against him. Because he cannot prove these necessary elements, Gatter's claims for malicious prosecution and false arrest, under both state law and section 1983, are dismissed. The remaining claims regarding intentional infliction of emotional distress and loss of consortium are also insufficient.

An appropriate order follows.

### *ORDER*

AND NOW, this 7th day of October, 1999, upon consideration of Defendants James Danbach and James Williamson's Motion and Amended Motion for Summary Judgment, and the response thereto, it is hereby ORDERED that said Motions are GRANTED. The other named Defendants having been previously dismissed from the case, the case is to be marked CLOSED.