**Joann BRISTOW, Plaintiff**

v.

**Jacob C. CLEVENGER, Donald E. Hopple, Jr., Defendants.**

**No. CIV. 1:CV–98–2010.**

United States District Court, M.D. Pennsylvania.

Jan. 19, 2000.

**423**

Don E. Bailey, Harrisburg, PA, for Joann Bristow.

David J. Lanza, Lemoyne, PA, James D. Young, Lavery & Kain, Harrisburg, PA, for Jacob C. Clevenger.

Anthony J. Piazza, Jr., Scranton, PA, Kathleen E. Holmes, Murphy, Piazza, & Genello, P.C., Lancaster, PA, Anthony R. Sherr, Mayers, Menneis & Sherr, LLP, Blue Bell, PA, for Donald E. Hopple, Jr.

Donald L. Reihart, Law Offices of Donald L. Reihart, York, PA, for Chuck Patterson.

James D. Young, Lavery & Kain, Harrisburg, PA, Frank J. Lavery, Jr., Lavery and Kain, Harrisburg, PA, for Spring Garden Township.

## MEMORANDUM

RAMBO, District Judge.

Before the court are separate motions for summary judgment submitted by Defendants Clevenger and Hopple. The parties have briefed the issues, and the motions are ripe for disposition.

### I. Background

The instant case is a civil rights action in which Plaintiff alleges the following: violation of 42 U.S.C. § 1983 through deprivation of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments based upon malicious prosecution and abuse of process (Count I); violation of federal wiretapping law (Count II), violation of state wiretapping law (Count III); and state tort claims for malicious prosecution, abuse of process, and false arrest (Count IV). The Defendants remaining in the case are: Jacob C. Clevenger, Plaintiff's former husband who is a police officer in the Spring Garden Township Police Department, and Donald E. Hopple, Jr., a detective in the Windsor Township Police Department. Except where noted, the following facts are undisputed by the parties:

Plaintiff Joann Bristow and Defendant Clevenger married in April 1988 and divorced in September 1996. Plaintiff testified that prior to the divorce, on May 15, 1996, she returned home and was made aware of a telephone conversation which

was allegedly intercepted and/or recorded by Clevenger on May 13, 1996. (Bristow Dep. at 122–24, 127.) Plaintiff testified that Clevenger played a tape for her of her prior conversation with her friend, Judy Albright. Plaintiff testified that she never gave him permission to record the conversation. (*Id.* at 126–27; Pl.'s Memo. in Supp. of Summ. Jud., Ex. A, Bristow Aff.) [1]

Plaintiff and Clevenger signed a Marital/Separation Agreement (hereinafter "Agreement") on August 9, 1996 that, *inter alia,* discussed health insurance. Plaintiff and Clevenger had agreed in June 1996 that he would help her pay for her medical insurance. Plaintiff had no medical insurance through her employer at that time. As a part of the Agreement, Clevenger agreed to pay one half of the cost of Plaintiff's COBRA medical insurance through Spring Garden Township for one year from the date of the Agreement. Plaintiff read the Agreement prior to signing it, and was represented by counsel. Other than what is contained within the Agreement, there was never any other agreement between Plaintiff and Clevenger concerning health insurance issues.

As per the Agreement, Clevenger paid half of Plaintiff's COBRA Insurance premiums for a period of one year from the date of the Agreement. Plaintiff dropped her COBRA Insurance with Spring Garden Township on March 15, 1997. She took no steps to notify Clevenger that she had canceled the Insurance, nor did she take steps to reimburse him the prepayment for the premiums that she had received. She applied the money to insurance that she got at her new place of employment.

Clevenger testified that he later learned through the Township Secretary that Plaintiff had dropped her insurance. He claims that this led him to believe, pursuant to the Agreement, that she owed him a

refund. He sent her a letter on or about May 27, 1997, requesting a refund of $426.50, representing the COBRA benefits premiums which were advanced to her. Clevenger approached Defendant Hopple about filing criminal charges against Plaintiff. Hopple has worked for the Windsor Police Department since April 1986. Defendants Hopple and Clevenger have known each other for several years in a professional capacity. Clevenger briefly told Hopple that there was an agreement between himself and Plaintiff, whereby he was supposed to pay her money towards the COBRA Insurance. Hopple testified that at that time, Clevenger told him that Bristow owed him a certain amount of money because she had canceled the insurance and utilized the remaining money that was to be used for the COBRA Insurance for something else. (Hopple Dep. at 29.) Hopple testified that, based on the description given to him by Clevenger, he ascertained that there was criminal conduct in the case. (*Id.* at 31.) On the two occasions when Clevenger and Hopple discussed the matter, they were both on duty working for their respective police departments; Clevenger was in uniform. During their second meeting on this matter, Clevenger gave Hopple a letter from Glenda Alwine at Spring Garden Township stating that Plaintiff no longer had insurance through Spring Garden's COBRA plan.

Hopple testified that he initially thought, and told Clevenger, that the matter may have been civil because it arose out of a marital agreement. (*Id.* at 42.) However, Clevenger testified that they discussed that, and Clevenger explained that he thought the situation was similar to a bad check complaint and could be pursued either criminally or civilly or both. (Clevenger Dep. at 73–74.) After the second meeting where Hopple got more of the specifics from Clevenger, Hopple spoke to

1. In an order of January 6, 2000, the court granted Defendant Clevenger's motion to strike Plaintiff's motion for partial summary judgment from the record. While the court is

aware that Bristow's affidavit was attached to that stricken summary judgment motion, the court has used it in this memorandum solely for the purposes of factual background.

then Chief of Police of Windsor Township, Earl Shenk, about the criminal charges. Hopple asked Chief Shenk whether he thought the charges were civil or criminal. Chief Shenk told Hopple to take this question to the York County District Attorney's Office for a decision.

Subsequently, Hopple spoke to Assistant District Attorney ("ADA") Adams by telephone and they discussed the pertinent elements of the proposed offense. Adams took all of the information from Hopple and was going to have a staff meeting and then get back to Hopple with an answer as to whether the charges were civil or criminal. Hopple testified that, during a second conversation, Adams told him that the elements of the crime had been met but that he felt that the matter was civil. (*Id.* at 46.) Afterward, Hopple spoke with Clevenger again and explained what Adams had said. Clevenger informed Hopple that he had already spoken to another ADA, Chuck Patterson, who agreed to do some research into the issue and then get in contact with Hopple.

Clevenger told ADA Patterson that he paid his wife money for insurance and she did not spend it on insurance. Clevenger and Patterson reviewed the criminal statute line by line and they determined that the elements of the crime had been met. Patterson told Clevenger to tell Hopple that it was okay to file charges against Bristow. Clevenger spoke to Hopple and passed on that information. Also, after the conversation between Patterson and Clevenger, Patterson spoke to Hopple and approved the prosecution of Plaintiff. Patterson testified that his idea of approval was that, based upon the facts related to him, there were sufficient facts in order to establish in his opinion a prima facie case. (Patterson Dep. at 60, 62.) However, Plaintiff contends that neither Clevenger nor Hopple ever told Patterson that the money at issue had been used by her to purchase alternate insurance.[2] Whereas

Clevenger testified that, to this day, he still does not know what Bristow did with the money he gave her for the COBRA Insurance premiums in 1997. (Clevenger Dep. at 61–62, 66.)

Hopple testified that "Patterson directed [him] to file the charges of theft by failure to make required disposition of funds and indicated that the elements of the crime were met." (Hopple Dep. at 55.) However, Patterson testified that he did not "direct" such action, but that he only "approved" the filing of charges. (Patterson Dep. at 19.) Hopple testified that he went back to Chief Shenk and explained that Patterson directed him to file the criminal charge against Plaintiff. (Hopple Dep. at 55.) He further testified that Chief Shenk responded that if that was what the District Attorney's Office directed him to do, then he was to do so. (*Id.* at 56.)

Hopple spoke with Plaintiff over the phone twice during the course of his investigation, prior to filing the criminal complaint. Hopple told Plaintiff that he was contacted by Clevenger regarding a matter of her owing money to Clevenger. Hopple also told Plaintiff that he knew Clevenger as a police officer in the area but did not know him personally. The second time Hopple called Plaintiff, he asked her if she had paid the money to Clevenger. He also told her that the York County District Attorney's Office was going to follow through with the charges if she did not pay the money back. Plaintiff testified that, during one of the two phone conversations, she told Hopple that she had applied the money from the COBRA Insurance toward other insurance. (Bristow Dep. at 72–73.) She also told him that she was not going to pay the money back to Clevenger.

Hopple testified that he himself believed the "elements of the crime as [he] read in the Pennsylvania Crimes Code were definitely there." (*Id.* at 42.) Hopple pre-

---

**2.** Additionally, Patterson testified that, although he could not remember who told him,

he was told that Plaintiff did not get replacement insurance. (Patterson Dep. at 33.)

pared a criminal complaint charging Plaintiff with theft by failure to make required disposition of funds,[3] filed it with Magistrate Douglas F. Meisenhelter, and sent a summons to Plaintiff by mail. The criminal complaint was served on her by certified mail at her home in Shrewsberry, Pennsylvania. Plaintiff waived her preliminary hearing and was released on her own recognizance. Later, she appeared in court for a pretrial conference. At the pretrial conference, the judge kept the case on the trial schedule but he expressed his belief that the controversy was a civil, not a criminal matter. The prosecutors assigned to the case asked for more time to review the case. Directly after the pretrial conference, Plaintiff, traveling in a separate car from Hopple, followed him to the police station. She testified that during the drive, Defendant Clevenger followed in a car behind her and made gestures, including using his middle finger. (Bristow Dep. at 89.) At the police station, Hopple took Plaintiff's fingerprints and photographed her. She testified that she felt "extremely embarrassed and humiliated" during the experience. (Bristow Dep. at 93.) The District Attorney's Office dropped the charges against Bristow soon after the pretrial conference. On June 11, 1998 the Court of Common Pleas of York County expunged Plaintiff's arrest record upon the District Attorney's Office's application to *nolle prosequi* the criminal charges against Plaintiff.

After the record was expunged, Clevenger retained counsel and filed a civil petition for special relief seeking to recoup $ 426.00 that had been advanced to Plain-

tiff by him for COBRA benefits. The York County Court of Common Pleas issued an opinion dated June 22, 1998 by the Honorable Gregory M. Snyder, in which he determined that Plaintiff had violated the terms of the Agreement and ordered her to repay the money to Clevenger. (Bristow Dep., Ex. 4, p. 6.)

On December 10, 1998 Plaintiff brought the instant civil rights action against Defendants Clevenger, Hopple, and other Defendants no longer in the case. On November 5, 1999 Defendant Hopple filed a motion for summary judgment on the counts against him for malicious prosecution, abuse of process, and false arrest. Defendant Clevenger filed a motion for summary judgment on November 10, 1999 as to the counts against him for malicious prosecution, abuse of process, false arrest, and violation of federal and state wiretapping laws. This memorandum and accompanying order address both Defendants' motions.[4]

## II. *Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

---

3. Theft by failure to make required disposition of funds is codified at 18 Pa. Cons.Stat. Ann. § 3927:

   A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in an equivalent amount, is guilty of theft if he intentionally deals with the property attained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that

   it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

4. Plaintiff submitted a motion for partial summary judgment which the court struck from the record as being untimely; therefore, this motion will not be addressed. Nevertheless, the issue discussed in the motion would be mooted by the court's findings in Section III(A) and (B) *infra.*

2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988).

Once the moving parties have shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in her complaint; instead, she must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial. *See id.*

## III. *Discussion*

The court will address Plaintiff's claims concerning federal and state wiretapping charges in Parts A and B, respectively. Subsequently, the court will separately address Plaintiff's federal claims for malicious prosecution and abuse of process, initiated pursuant to 42 U.S.C. § 1983, in Part C; and Plaintiff's state tort law claims for malicious prosecution, abuse of process, and false arrest, in Part D.

### A. *Count II: Violation of Federal Wiretapping Law* [5]

Defendant Clevenger asserts that Plaintiff's federal wiretapping claim is barred by the statute of limitations. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, at 18 U.S.C. § 2520, authorizes a civil cause of action by a person whose wire or oral communication is intercepted, disclosed, or used in violation of the act. Subsection 2520(e) provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." Plaintiff testified that the alleged interception of her telephone conversation occurred on or about May 13, 1996, and that she was made aware of the interception on May 15 or 16, 1996. (Bristow Dep. at 122–24.) Plaintiff did not file her complaint alleging violation of § 2520 until December 10, 1998, more than two years after her discovery of a potential cause of action. Therefore, Count II, alleging a violation of federal wiretapping law, should be dismissed as time-barred. Accordingly, summary judgment will be granted in favor of Defendant Clevenger as to Count II.

### B. *Count III: Violation of State Wiretapping Law* [6]

The court turns next to Count III, Plaintiff's allegation that Clevenger violated state wiretapping law. Clevenger puts forth a statute of limitations defense to this claim as well. However, because the statute does not provide a statute of limitations, the court must predict which of the Pennsylvania statutes of limitations the Pennsylvania Supreme Court would apply [7]

---

5. Neither Plaintiff's complaint nor briefs address a specific statute concerning the alleged wiretapping violation; however, the court finds that 18 U.S.C. § 2520 is the relevant federal statute.

6. Neither Plaintiff's complaint nor briefs address a specific statute concerning the alleged wiretapping violation; however, the court

finds that 18 Pa. Cons.Stat. Ann. § 5725 is the relevant state statute.

7. Our task is to predict what the Pennsylvania Supreme Court would do if presented with this issue. *See U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.*, 80 F.3d 90, 93 (3d Cir.1996).

to an action for violation of 18 Pa. Cons. Stat. Ann. § 5725, Pennsylvania's law providing a civil action for unlawful wiretapping. Plaintiff proposes that we should follow the lead of two recent cases and hold that 42 Pa. Cons.Stat. Ann. § 5527 applies. She argues that Pennsylvania's residual six-year statute governs this case. It provides: "The following actions and proceedings must be commenced within six years: ... (6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation)." 42 Pa. Cons.Stat. Ann. § 5527. The issue, therefore, is whether the claim asserted is "subject to another limitation" period. Defendant Clevenger asserts that the two-year statute of limitations supplied by 42 Pa. Cons.Stat. Ann. § 5524 is such a limitation. It reads:

> The following actions and proceedings must be commenced within two years ...(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

*Id.*

There being no Pennsylvania Supreme Court case addressing the issue, this court recognizes the Third Circuit's mandate that a federal court's "power of prophecy is to be informed by a proper regard for the decisions of the lower courts of Pennsylvania." *Mazzanti v. Merck and Co., Inc.*, 770 F.2d 34, 36 (3d Cir.1985). The court first considers the two cases that lend support to Plaintiff's position. In *Boettger v. Miklich*, 142 Pa.Cmwlth. 136, 599 A.2d 713, 716–17 (1991), *rev'd on other grounds*, 534 Pa. 581, 633 A.2d 1146 (1993),

the Commonwealth Court held that the six-year catchall limitations period of § 5527 applied to an action under § 5725 because the action is not specified elsewhere in Title 42. However, what is significant to that holding but which the court did not address, is that the intercepted telephone conversation that supplied the cause of action took place in 1981, and § 5524 was not amended to add paragraph 7 until 1982. Although the *Boettger* court did not address § 5524(7), it would not have affected the outcome of the case because the underlying allegedly unlawful activity occurred before the statute took effect. Thus, the *Boettger* court could not make use of § 5524(7), the two-year statute of limitations which is effectively a catchall limitations period for torts, because it was not yet in effect.[8]

The other case that Plaintiff relies upon is an unpublished federal district court case, *Donahue v. Gavin*, No. Civ.A.98–1602, 1999 WL 165700 (E.D.Pa. March 12, 1999). Without any analysis, that court cited *Boettger*, 599 A.2d at 716, for the proposition that Pennsylvania wiretapping claims are subject to a six-year statute of limitations. *Donahue*, 1999 WL 165700, at *6. However, it was not necessary for the court to decide between the six-year and two-year statutes of limitation because the alleged unlawful acts occurred more than six years prior to the commencement of the action and were untimely under either limitations period. *See id.* Therefore, keeping these facts in mind, this court does not find the unpublished opinion in *Donahue* to be persuasive authority.

■ The court, finding no other state or federal court addressing the issue at bar, turns to the plain language of § 5524. The statute was amended in 1982 to include paragraph seven, fully set forth at page 424 *supra*. This additional paragraph applies a two-year statute of limitations to "[a]ny other action ... founded on

---

**8.** The court notes that *Boettger* was appealed to the Pennsylvania Supreme Court; however, the statute of limitations issue was not

addressed on appeal. The court only addressed whether the good faith defense of § 5725(c) applied to the appellees/defendants.

negligent, intentional, or otherwise tortious conduct." 42 Pa. Cons.Stat. Ann. § 5524(7). The court finds that the civil action supplied by 18 Pa. Cons.Stat. Ann. § 5725 is such a tortious action. Therefore, the plain meaning of § 5524(7) applies a two-year statute of limitations to the unlawful wiretapping allegation in the case at bar. As previously discussed in Section III(A) *supra*, Plaintiff did not initiate the current action until more than two years after she learned of the alleged unlawful wiretapping; accordingly, her claim under § 5725 is also time-barred. Consequently, summary judgment will be granted in favor of Defendant Clevenger as to Count III.

### C. *Count I: 42 U.S.C. § 1983 Claims*

■ Plaintiff uses § 1983 as the vehicle to bring her civil rights claims arising from malicious prosecution and abuse of process. It is well settled that "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The plaintiff in a § 1983 claim must prove: (1) that the defendants deprived her of a right secured by the Constitution or the laws of the United States; and (2) that defendants were acting under color of state law in effecting such a deprivation. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141–42 (3d Cir.1990). Thus, the first step in analyzing a § 1983 claim is identification of the specific federal right or rights allegedly violated by the defendants' actions. *See Baker*, 443 U.S. at 140, 99 S.Ct. 2689.

#### 1. *Malicious Prosecution*

Plaintiff alleges violations of her rights guaranteed by the Fourth and Fourteenth Amendments by Defendants Clevenger and Hopple based upon malicious prosecution. However, the United States Supreme Court announced: "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham*, 490 U.S. at 394, 109 S.Ct. 1865) (internal quotations omitted). The Third Circuit has explained that:

> Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort. Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution. Thus, as the Court of Appeals for the Second Circuit stated in a post-Albright decision, a plaintiff asserting a malicious prosecution claim must show some *deprivation of liberty consistent with the concept of seizure.*

*Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir.1998) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995)) (internal quotations omitted) (emphasis added). The Third Circuit held that "[b]ecause under the common law, the tort of malicious prosecution concerns 'perversion of proper legal procedures,' [Plaintiff] must show that [s]he suffered a seizure as a consequence of a legal proceeding." *Id.* This court will therefore focus on Plaintiff's Fourth Amendment seizure claim, and will not allow her to pursue § 1983 claims based upon substantive due process.

■ Plaintiff argues that the following undisputed facts are sufficient to demonstrate that she was seized: she was processed for a criminal record by being fingerprinted and photographed by Detective Hopple, she attended a pretrial conference, and she attended a judicial proceeding where her record was expunged after the District Attorney's Office withdrew the criminal charges. The Third Circuit's de-

cision in *Gallo* is particularly useful precedent because it provides a detailed analysis of the seizure question in a malicious prosecution case. The *Gallo* court found that the plaintiff had been seized when "he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania." *Id.*

Comparing the restrictions on Gallo's liberty with those in the instant case, it is obvious that Plaintiff here was far less restricted. She was released on her own recognizance as opposed to having bail set. Her freedom of movement was not confined to any geographic area. Even the court proceedings were less restrictive: she waived her preliminary hearing and, without being subject to bail forfeiture, she only had to attend a pretrial conference and a hearing where her record was expunged as compared to Gallo being required to attend an arraignment and trial.

The Third Circuit's decision in *Gallo* did address the effect of the requirement to attend court hearings upon the plaintiff's liberty and its similarity to a *Terry* seizure.[9] However, the court also addressed how the plaintiff's liberty was restrained because of the bail set, as well as the restraint on his geographic mobility. The court considered the totality of the restrictions on the plaintiff and determined that there was a seizure. Even keeping in mind the *Gallo* court's words: "we would remain closest to our own precedent by adopting a broad approach in considering what constitutes a seizure," *id.* at 224, in the instant case we find that there was no seizure.

Even with the additional restrictions not present in the case at bar, the *Gallo* court believed that there was "a close question" as to whether there was a seizure in that case. *Id.* at 222. If this court held that there were a seizure based on the facts in the instant action, then the vast majority of the *Gallo* decision would have been wasted effort. This court would essentially be holding that every time a criminal complaint was filed without probable cause and any judicial proceeding ensued, a Fourth Amendment violation would occur. This would undermine the Supreme Court's decision in *Albright,* 510 U.S. 266, 114 S.Ct. 807.

Based upon the aforementioned reasoning, the court finds that Plaintiff was not subject to seizure and therefore cannot maintain a claim for malicious prosecution pursuant to § 1983. Accordingly, summary judgment will be granted in favor of Defendants Clevenger and Hopple as to Count I's malicious prosecution cause of action.

### 2. *Abuse of Process*

■ Plaintiff does not distinguish her abuse of process claim from her malicious prosecution claim. Although the two torts are separate and distinct actions, the Pennsylvania Supreme Court has pointed out that there is often confusion between the two. *See McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987). In that case, the state's highest court quoted one of its earlier cases which described the difference:

> The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it ... On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated ... other than its proper effect and execution. Malicious use of civil process [or malicious prosecution] has to do with the wrongful initiation of such process, while abuse of civil process [or criminal process] is concerned with a perversion of a process after it is issued.

9. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Id.* at 1023 (citations omitted) (quoting *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943)). Thus, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle,* 871 F.2d 331, 350 (3d Cir.1989) (citing *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir.1977)). Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." *Brown v. Johnston,* 675 F.Supp. 287, 290 (W.D.Pa.1987). "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." *Barakat v. Delaware County Mem'l Hosp.,* No. Civ.A.97–2012, 1997 WL 381607, at *2 (E.D.Pa. July 2, 1997). "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.'" *Williams v. Fedor,* 69 F.Supp.2d 649, 673 (M.D.Pa.1999) (quoting *Feldman,* No. CIV.A.93–1260, 1993 WL 300136, at *4).

In the instant action, Plaintiff does not allege facts that support a claim for abuse of process. She does not maintain that the criminal action against her was initiated legitimately and then "perverted." She has not produced any evidence that Defendants desired or demanded anything other than the action's authorized conclusion—criminal conviction.[10] "[T]here is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Management Assoc., Inc.,* 817 F.Supp. 19, 21 (E.D.Pa.1992). Therefore, Plaintiff cannot maintain a claim for abuse of process. Accordingly, summary judgment will be found in favor of Defendants Clevenger and Hopple as to Count I's abuse of process claim.

### D. *Count IV: State Tort Claims*

The court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state tort claims of malicious prosecution, abuse of process, and false arrest. Although the court has dismissed all federal causes of action, it follows the Third Circuit's direction to "take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). In so doing, the court recognizes that the remaining state law claims are similar, if not identical, to the federal § 1983 claims decided *supra.* Furthermore, trial is scheduled to begin in a matter of weeks, and thus, judicial economy favors exercising supplemental jurisdiction over the state law claims.

Defendants Clevenger and Hopple each assert that they should be immune from Plaintiff's state law claims based upon qualified immunity[11] and the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 *et seq.* The doctrine of qualified immunity shields "government officials performing discre-

---

10. To the extent that Plaintiff would argue that Defendants pursued the criminal action out of malice or in order to harass her, this represents the basic difference between malicious prosecution and abuse of process. The goal of malicious prosecution is the bringing of the action itself, while the goal of abuse of process is something entirely different. *See McGee,* 535 A.2d at 1023.

11. "Qualified immunity covers civil liability claims brought against police officers under both 42 U.S.C. § 1983 and the common law." *Capone v. Marinelli,* 868 F.2d 102, 106 n. 6 (3d Cir.1989) (citing *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

tionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For example, an arrest made without probable cause, clearly violates established rights. *See Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984). Thus, in the case at bar, if there was an absence of probable cause, qualified immunity will not apply.

Similarly, the willful misconduct exception under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8550, provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or *willful misconduct,* the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

*Id.* (emphasis added). Pennsylvania courts have held that in this context "willful misconduct is synonymous with 'intentional tort.'" *King v. Breach,* 115 Pa. Cmwlth. 355, 540 A.2d 976, 981 (1988). As is discussed in Section III(D)(1) *infra,* the court cannot hold that Defendants had probable cause in filing the criminal complaint against Plaintiff. Therefore, Defendants are not protected by governmental immunity with respect to the intentional torts alleged, namely, malicious prosecution, abuse of process, and false arrest. *See Lancie v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (1990).

**12.** The court found that Plaintiff could not support a malicious prosecution claim pursuant to § 1983, *see supra* Section III(C)(1),

### 1. *Malicious Prosecution*

■ In Pennsylvania, a party bringing a malicious prosecution claim must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.1996) (citing *Haefner v. Burkey,* 534 Pa. 62, 626 A.2d 519, 521 (1993)).[12] Defendants contest all four elements; the court will address each in turn.

### a. *Initiation of Criminal Proceeding*

■ Each Defendant disclaims responsibility for initiating the criminal proceeding. Defendant Clevenger cites *Griffiths v. CIGNA Corp.,* 988 F.2d 457 (3d Cir.1993), in an attempt to support his argument that because he did not swear out the complaint or explicitly direct that the prosecution be started, he cannot be found to have initiated the proceeding. However, "[i]t is not necessary that defendant initiate the proceedings himself. Liability for malicious prosecution can also attach when defendant influences a third party to initiate the proceedings." *Gilbert v. Feld,* 788 F.Supp. 854, 861 (E.D.Pa.1992) (citing *Hess v. County of Lancaster,* 100 Pa.Cmwlth. 316, 514 A.2d 681, 683–84 (1986)).

In *Griffiths* the Third Circuit explained the background of Pennsylvania's differentiation "between situations in which a private individual files a complaint or demands a prosecution and those in which he merely provides information to the police." 988 F.2d at 464. Citing the Restatement of Torts, the *Griffiths* court stated that "in the latter case a private individual who does not knowingly provide false information is not responsible for the institution of the proceedings, and thus cannot be held

because she was not seized; however, seizure is not a necessary element in the state common law tort of malicious prosecution.

liable for malicious prosecution as he need not have had a reasonable basis for making the accusation." *Id.* Thereafter, the court cited *Campbell v. Yellow Cab Co.,* 137 F.2d 918, 921 (3d Cir.1943) (holding person who merely identifies suspect and "does not otherwise attempt to influence the officers in the exercise of their discretion as to the prosecution of the person identified [if] the person making the identification believes it to be correct ... is not deemed the instigator of criminal proceedings subsequently begun by the police ..."). However, Plaintiff has produced evidence that may fit within the exception delineated in *Campell.*

There is evidence that supports the inference that Defendant Clevenger attempted to influence the independent judgment of Officer Hopple. For instance, when Hopple expressed his belief that the action might be civil, Clevenger continued to pursue the action. Additionally, Clevenger and Hopple may have tried to influence ADA Patterson's independent judgment. Clevenger approached Patterson about the matter after ADA Adams expressed his belief that it was civil and not criminal. Neither Defendant told Patterson that they had spoken with Adams or what he said. Additionally, neither Defendant told Patterson that Plaintiff had used the money intended for COBRA Insurance for another insurance policy. In fact, though Patterson stated that he did not recall who told him, he did testify that Plaintiff did not get replacement insurance. These issues of fact support the proposition that Defendants, at the least, may have omitted material information from what they told the prosecutor. This would supply a basis for malicious prosecution. *See Torres v. McLaughlin,* 966 F.Supp. 1353, 1365–66 (E.D.Pa.1997) (holding that there was sufficient evidence to permit a jury to conclude that police officer made false statements to prosecutor, such that officer may be charged with the initiation of the criminal proceeding), *rev'd on other grounds,* 163 F.3d 169 (3d Cir.

1998); *Rhodes v. Smithers,* 939 F.Supp. 1256, 1273 (S.D.W.Va.1995) (holding that one is liable for malicious prosecution if he "fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment.") (citing cases), *aff'd,* 91 F.3d 132, 1996 WL 420471 (4th Cir.1996).

Defendants both participated in bringing the criminal complaint against Plaintiff. They spoke to a second prosecutor when the first prosecutor would not authorize the criminal proceeding. There is evidence that they did not disclose all material information to the second prosecutor. Consequently, the court cannot find as a matter of law that Defendants did not initiate the criminal proceeding against Plaintiff.

**b. *Criminal Proceeding Ended in Plaintiff's Favor***

■ Concerning the second element, Defendant Hopple argues that there was never any criminal proceeding that ended in Plaintiff's favor since the charges were dropped. However, it is well-settled that a grant of *nolle prosequi* satisfies the requirement that outcome be in Plaintiff's favor in a malicious prosecution cause of action. *See Hilfirty,* 91 F.3d at 584–85. Thus, Plaintiff meets the second element.

**c. *Probable Cause***

■ Both Defendants contest the third element of malicious prosecution and maintain that they had probable cause in initiating the criminal proceeding against Plaintiff. The court initially indicates that in a malicious prosecution case, the question of probable cause is a question for the court and not the jury. *See Gilbert v. Feld,* 842 F.Supp. 803, 815 (E.D.Pa.1993); *Simpson v. Montgomery Ward & Co.,* 354

Pa. 87, 46 A.2d 674, 675 (1946).[13] In *Simpson,* the court wrote:

It has been immemorially held that the public interest requires that the legally trained mind of the judge and not the more or less emotional minds of jurors, decide whether or not there was probable cause for the initiation of the prosecution. Jurors are likely to confuse the issue of guilt or innocence of the defendant in the criminal case out of which the civil action originated with the basic issue whose determination decides the civil action. That basic issue is the want of probable cause for the criminal prosecution.

*Id.* at 676 (citing Blackstone's Vol. 3, Sec. 127). However, the court notes that some recent federal district court cases purportedly applying Pennsylvania law in a malicious prosecution context have written that "the existence of probable cause is generally a jury question." *Gatter v. Zappile,* 67 F.Supp.2d 515, 519 (E.D.Pa.1999); *accord Telepo v. Palmer Township,* 40 F.Supp.2d 596, 611 (E.D.Pa.1999). These two courts appear to base their findings on *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984), which is inapposite because it applied Virgin Islands, and not Pennsylvania law.[14] Furthermore, the language of the two Pennsylvania district court cases was only dicta. Based upon Pennsylvania precedent and policy considerations for holding that the determination of probable cause is a question for the court, not the jury in malicious prosecution cases, and noting that these issues were not addressed in *Gatter* and *Telepo,* this court disagrees with the contradictory dicta of those recent courts.

Notwithstanding the preceding discussion, when the probable cause determination depends upon disputed issues of fact, the court should submit the factual disputes to the jury, and then make the probable cause determination based upon the jury's findings. *See Simpson,* 46 A.2d 674, 678–79; *Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 475 (3d Cir.1973).

The test for probable cause has both a subjective and an objective component. The subjective component requires that the defendant "honestly believe" that the accused committed the crime for which she was prosecuted, while the objective component requires that his belief be based upon "a *reasonable ground* of suspicion of guilt." *Neczypor v. Jacobs,* 403 Pa. 303, 169 A.2d 528, 531 (1961) (emphasis added); *accord Gilbert,* 842 F.Supp. at 815.

In the case at bar, Defendants assert that they believed that Plaintiff committed the crime of theft by failure to make required disposition of funds. They argue that in their own reading of the elements of the crime, Plaintiff was culpable. Additionally, they argue that both ADAs also believed that she was guilty, despite the fact that ADA Adams told them that he felt it was a civil matter. However, the court believes that there are significant issues of material fact, including questions of credibility, that prevent it from finding that Defendants believed Plaintiff was guilty of the crime. There is a question of fact as to what Defendants told, or withheld from, ADA Patterson in pursuing the initiation of the criminal proceeding. Whether they told him that they had previously spoken to another prosecutor who felt the matter was civil, and whether they

**13.** The Pennsylvania Supreme Court stated: "There is no principle more firmly imbedded in the law than the principle that in case of malicious prosecution, the question of want of probable cause for the criminal prosecution which gave rise to the civil action, is a question not for the jury but for the court. We have said so in a long line of cases." *Id.* at 676.

**14.** To the extent that the more recent Third Circuit case, *Groman v. Township of Manalapan,* 47 F.3d 628, 635 (3d Cir.1995), also indicates that probable cause is a jury question, this court notes that *Groman* was applying New Jersey, not Pennsylvania law.

told him that Plaintiff did or did not use the money for a different insurance policy, are issues from which a negative inference about Defendants' honest belief in Plaintiff's guilt could be drawn. There is also testimony by Defendant Hopple that at one time he believed the matter might be civil as opposed to criminal. These unresolved issues place significant doubt as to the subjective component of the probable cause determination.[15] Thus, although the court also has questions concerning the objective component of the determination, it is not necessary to address them. Accordingly, the court cannot hold as a matter of law that Defendants had probable cause to initiate criminal proceedings against Plaintiff.[16]

### d. *Malicious Intent*

■ Turning to the final element, Plaintiff has put forth enough evidence to survive a motion for summary judgment as to the question of whether the Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice. "Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights." *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988); *Hugee v. Pennsylvania R. Co.,* 376 Pa. 286, 101 A.2d 740, 743 (1954). Additionally, malice may be inferred from the absence of probable cause. *See Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 544 A.2d 940, 941

**15.** Defendants also argue that findings in the civil case that Clevenger brought against Plaintiff collaterally estop this court from making certain findings concerning the parties' Agreement, Plaintiff's violation of the terms of the Agreement, and the probable cause determination. However, based in part upon the subjective component of the probable cause determination, this court finds Defendants' argument wholly unpersuasive.

**16.** Based upon the disputed issues of fact and corresponding questions of credibility, the court will not now make the determination of probable cause, but instead will direct the

(1988); *Hugee,* 101 A.2d at 743. In the instant case, there is evidence that suggests that Defendants continued to pursue the initiation of criminal charges, despite the first ADA, Adams's, belief that it was not a criminal matter, but a civil one. Additionally, the question of what Defendants subsequently told or withheld from ADA Patterson, in pursuing the charges, supplements the inference that Defendants may have acted with malice. Accordingly, the court cannot hold as a matter of law that Defendants did not initiate the criminal prosecution with malicious intent. Therefore, summary judgment cannot be granted on the state tort claim of malicious prosecution in Count IV.[17]

### 2. *Abuse of Process*

The court has already held that Plaintiff has not produced evidence which would support the common law tort of abuse of process. *See supra* Section III(C)(2). Therefore, summary judgment will likewise be granted in favor of Defendants Clevenger and Hopple as to the abuse of process claim in Count IV.

### 3. *False Arrest*

■ Under Pennsylvania law, a false arrest consists of an arrest made without probable cause. *See Gilbert v. Feld,* 842 F.Supp. 803, 821 (E.D.Pa.1993). However, in the case at bar, although a criminal complaint was filed against Plaintiff, there is no evidence that she was ever arrested. An arrest is:

jury to answer certain questions, and will then make the determination based upon those findings of fact. *See Simpson,* 46 A.2d at 678–79.

**17.** Defendants argue that punitive damages are unavailable in the case because there was no evil motive or reckless indifference to Plaintiff's rights. However, because the state tort claim of malicious prosecution has not been dismissed, the question of malice remains unanswered. Therefore, a determination as to the availability of punitive damages is premature.

the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on the arrestee; (2) or by any act that indicates an intention to take the arrestee into custody and that subjects the arrestee to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. There can be no arrest where there is no restraint and the restraint must be under real or pretended legal authority. However, the detention of a person need not be accompanied by formal words of arrest or station house booking in order to constitute "arrest." Whether the restraint or detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the detention, and the degree of restraint. The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associate with formal arrest.

5 Am.Jur.2d Arrest § 2 (1995) (footnotes omitted). *See also United States v. Lampkin,* 464 F.2d 1093 (3d Cir.1972) (citing definition of arrest as stated in volume 5, American Jurisprudence Second); *Owens v. County of Delaware,* Civil No. 95–4282, 1996 WL 476616, at *11 (E.D.Pa.Aug.15, 1996) ("[A]lthough precise definitions are not possible, one court has noted that 'an arrest is a seizure characterized by highly intrusive or lengthy search or detention' ") (quoting *United States v. Espinosa,* 782 F.2d 888, 891 (10th Cir.1986)); *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975, 977 (1982) ("We have defined an arrest as any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest."). In the instant case, there is no claim that Plaintiff was restrained, did not have freedom of movement, or that she did not voluntarily follow Officer Hopple to the police station to have her fingerprints and photograph taken. Therefore, the court finds that Plaintiff's claim for false arrest must fail, and summary judgment will be granted in favor of Defendants Clevenger and Hopple as to this claim in Count IV.

## IV. *Conclusion*

In accordance with the foregoing discussion, the court will grant in part and deny in part Defendants' motions for summary judgment. The court will grant the motion for summary judgment in favor of Defendants Clevenger and Hopple as to Counts I, II, III, and the state tort claims of abuse of process and false arrest in Count IV. The court will deny the motion for summary judgment as to both Defendants on the state tort claim of malicious prosecution in Count IV. An appropriate order will issue.

## *ORDER*

Therefore, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Summary judgment is granted in favor of Defendants Clevenger and Hopple as to Count I, Count II, and Count III in their entirety, and Count IV insofar as Plaintiff asserts state claims for abuse of process and false arrest.

(2) Summary judgment is denied as to Defendants Clevenger and Hopple on the state tort claims of malicious prosecution in Count IV.

(3) Defendants' requested dismissal of punitive damages is denied.

(4) The Clerk of Court shall defer the entry of judgment until the conclusion of the case.