Charles BROCKINGTON, Plaintiff,

v.

CITY OF PHILADELPHIA, Police Officers Jane Doe # 1–2, Police Officers John Doe # 1–3, Tuwanda Shakoor, Lynda Manley, and Uraina Williams, Defendants,

No. Civ.A.03–5014.

United States District Court, E.D. Pennsylvania.

Jan. 27, 2005.

Alan E. Denenberg, Jonathan R. Alt-schuler, Abramson & Denenberg, Philaa-delphia, PA, for plaintiff.

Michael L. Detweiler, City of Philadel-phia Law Dept., Philadelphia, PA, for de-fendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Charles Brockington ("Brock-ington") brought this action against defen-dants for violations of his state and federal constitutional rights along with other state law claims in connection with an arrest. This court has jurisdiction pursuant to 28 U.S.C. § 1331 for the claims that arise under federal law and pendant jurisdiction pursuant to 28 U.S.C. § 1367(a) for the state law claims. Defendants filed a mo-tion for summary judgment, and plaintiff responded with a request that defendants' motion for summary judgment be granted in part and denied in part.

## I. FACTS

The facts in the light most favorable to the plaintiff are taken from the transcript of his criminal hearing in Philadelphia Municipal Court, No. 01–09–0521, before Judge Craig Washington. *Commonwealth v. Brockington,* No. 01–09–0521 (Phila.Mun.Ct. Dec. 21, 2001). The arrest in question happened on September 6, 2001 at approximately 1:00 a.m. (Tr. at 5.) Brockington was on or near the corner of Market Street and 57th Street in Philadelphia looking for a shuttle bus to get home. (Tr. at 17.) There were three women standing on the corner who asked him, "How you doing?" (*Id.*) He replied, "How you doing?" and asked them if the shuttle bus came in that area. (*Id.*) One woman said he missed one about fifteen minutes ago, and he asked if they came frequently. (*Id.*) That woman walked with him and they talked for a little bit. (*Id.*) The conversation did not include sex. (Tr. at 18–19.) Then she pointed to a cab that was in front of Rite Aid. (Tr. at 17.) Brockington walked across the street and the police came and arrested him. (Tr. at 17–19.) The woman who had talked with him was an undercover police officer, Officer Tuwanda Shakoor ("Shakoor"). (Tr. at 4–7.)

Brockington was immediately arrested for and charged with patronizing a prostitute under criminal statute 18 Pa.C.S.A. § 5902(e), which provides:

A person commits the offense of patronizing prostitutes if that person hires a prostitute or any other person to engage in sexual activity with him or her or if that person enters or remains in a house

of prostitution for the purpose of engaging in sexual activity.

Brockington's arrest violated his parole, which caused him to be imprisoned for three months after being arrested. (Compl.¶¶ 27, 30, 32.)[1] After a trial, Brockington was found not guilty. (Tr. at 19.)

The defendants have presented evidence, uncontested by Brockington, that defendants Lynda Manley and Uraina Williams were not personally involved with the arrest of Brockington. (Mot. Summ. J. Ex. C & D.)

## II. STANDARD OF REVIEW

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party must make an initial showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct.

---

1. Although plaintiff does not provide evidence to support this claim, it is not clear that defendants denied those facts since their answer to ¶¶ 21–35 of plaintiff's complaint is a general denial that does not address the specific claim that plaintiff was imprisoned. Because this fact is relevant for plaintiff's claim of malicious prosecution, and because defen-

dant failed to mention plaintiff's claim for malicious prosecution in their motion for summary judgment or reply to plaintiff's response indicating that qualified immunity does not apply, I am treating plaintiff's imprisonment as a disputed fact for purposes of summary judgment.

2548, *cited in Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 536 n. 3 (3d Cir.1994). In determining whether the non-moving party established each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec, Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Plaintiff's proposed order indicates that he does not oppose summary judgment as to Count III, Count IV, Count V, Count VI, and Count IX. Plaintiff's proposed order also indicates that he does not oppose summary judgment as to defendants Lynda Manley, Uraina Williams, and the Doe defendants in Count I, Count II, Count VII, and Count VIII. I grant summary judgment as to those counts.

The remaining portions of the amended complaint are the following: Count I against Shakoor, Count II against Shakoor, Count VII against Shakoor, and Count VIII against Shakoor. Defendants argue that these counts should also be dismissed. I will address defendants' arguments in turn.

### A. Qualified Immunity as to Plaintiff's Federal Claims

In the present case, the federal claims alleged under 42 U.S.C. § 1983 are false arrest and false imprisonment, and malicious prosecution. To recover under 42 U.S.C. § 1983, a plaintiff must establish that a state actor engaged in conduct that deprived him of "rights, privileges, or immunities" secured by the constitution or laws of the United States. *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000). Defendant Shakoor argues that she is shielded from liability by qualified immunity on all of the constitutional claims brought against her under 42 U.S.C. § 1983.

■■ The doctrine of qualified immunity provides that "law enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000) (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The qualified immunity defense involves a two-step analysis.

■ First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson,* 212 F.3d at 786 (citation omitted). Second, if plaintiff has alleged such a deprivation, a court should "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curley v. Klem,* 298 F.3d 271, 277 (3d Cir.2002) (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). A constitutional right is established if it is sufficiently clear and well-defined so that "a reasonable official would understand that what he is doing violates that right." *Carswell v. Borough of Homestead,* 381 F.3d 235, 242 (3d Cir. 2004) (citations omitted). Even if a reasonable official would so understand, the defendant may still be shielded from liability if he made a reasonable mistake as to what the law requires. *Id.* Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." *Curley v. Klem,* 298 F.3d 271, 277–78 (3d Cir.2002). A decision as to qualified immunity is "premature when there are un-

resolved disputes of historical facts relevant to the immunity analysis." *Id.* at 278.

### 1. False Arrest and False Imprisonment

██ In analyzing the qualified immunity defense to the claim of false arrest and false imprisonment, the first step is to determine whether Brockington has alleged a deprivation of an actual constitutional right. An "arrest without probable cause is a constitutional violation actionable under section 1983." *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978); *see also Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998). Therefore, Brockington has satisfied the first step by alleging a deprivation of an actual constitutional right, and I will turn to the second step of the qualified immunity analysis.

██ The second step of the qualified immunity analysis is to determine whether that right was clearly established at the time of the alleged violation. The Supreme Court has held that an arrest without a warrant is constitutionally valid if "at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). This right was clearly established on September 6, 2001 when Brockington was arrested. Although *Beck* did not deal with an arrest for patronizing

a prostitute, "there does not have to be 'precise factual correspondence' between the case at issue and a previous case in order for a right to be 'clearly established.'" *Kopec v. Tate,* 361 F.3d 772, 778 (3d Cir.2004) (citation omitted). A reasonable officer in Shakoor's position, knowing only what the evidence presented by Brockington indicates that she knew,[2] would have understood that her actions violated a clearly established right, and Shakoor could not have made a reasonable mistake as to what the law required.

The set of disputed facts that precludes summary judgment on grounds of qualified immunity is coextensive with the set of facts giving rise to the constitutional violation. Those factual issues are:[3] 1) whether Brockington and Shakoor discussed sex or sexual activity, and 2) whether Brockington offered Shakoor money for sex. These facts are material as to whether Shakoor had knowledge of facts that would warrant a prudent person to believe that Shakoor was violating Brockington's rights by arresting him without probable cause.

### 2. Malicious Prosecution

██ As to Brockington's federal malicious prosecution claim, Brockington has also successfully alleged the deprivation of an actual constitutional right. Although "prosecution without probable cause is not, in and of itself, a constitutional tort," it can be a constitutional tort if plaintiff can demonstrate a "deprivation of liberty consistent with the concept of 'seizure.'"[4] *Gallo v. Philadelphia,* 161 F.3d

---

2. The facts taken in the light most favorable to Brockington are that he walked up to Shakoor, asked her about a shuttle bus and made small talk, they did not discuss sex, and then Shakoor had him arrested.

3. I list all of the issues here as they are material to the question whether there has been a constitutional violation unprotected by qualified immunity. *See Forbes v. Township*

*of Lower Merion,* 313 F.3d 144, 148 (3d Cir. 2002) (requiring District Courts to "specify those material facts that are and are not subject to genuine dispute and explain their materiality").

4. Section 1983 malicious prosecution claims need not allege a deprivation of liberty consistent with a "seizure" if they allege another violation of the Bill of Rights other than a

217, 222 (3d Cir.1998) (following *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Brockington has alleged both the common law elements of malicious prosecution and a deprivation of liberty.

The question then becomes whether the constitutional right was clearly established at the time of the alleged violation. It was clearly established that a violation of common law malicious prosecution along with "some deprivation of liberty consistent with the concept of 'seizure' " constitutes a violation of the constitution. *Gallo*, 161 F.3d at 222; *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 794 (3d Cir.2000) (continuing to analyze the common law claim of malicious prosecution). The common law elements of malicious prosecution are the following: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle*, 211 F.3d at 791. In addition to these elements, plaintiff must demonstrate a deprivation of liberty consistent with the concept of "seizure."

The Third Circuit has held that a defendant who was never arrested or detained or handcuffed may nonetheless be "seized" as a consequence of a legal proceeding. *Gallo*, 161 F.3d at 219, 223. This could include the requirement to attend court hearings including trial and arraignment,

the posting of bond, the requirement to contact Pretrial Services weekly, and prohibitions on travel outside New Jersey and Philadelphia. *Id.* at 222. The *Gallo* court further opines that Justice Ginsburg is correct in her concurrence in *Albright v. Oliver*, that being bound to appear and answer to the court's charges is sufficient to constitute "seizure." *Gallo*, 161 F.3d at 223 (citing *Albright v. Oliver*, 510 U.S. at 279, 114 S.Ct. 807). Based on this reasoning, *Gallo* states that even the defendant who is released on bail is "seized." *Gallo*, 161 F.3d at 223.[5]

Brockington has set forth sufficient evidence to create a material issue of fact as to each of the elements of malicious prosecution and as to whether plaintiff was deprived of his constitutional right to liberty. First, when all reasonable inferences are drawn in favor of Brockington, one can infer that Shakoor initiated the criminal proceeding. Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, "[a]n officer may, however, be considered to have initiated a criminal proceeding if he or she 'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.' " *Gatter v. Zappile*, 67 F.Supp.2d 515, 521 (E.D.Pa.1999) (citations omitted). Second, the criminal trial ended in a finding of not guilty. Third, as discussed in the preceding analysis of false arrest and false imprisonment, there is a genuine issue of material fact as to wheth-

substantive due process violation. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir.2000). Because plaintiff's complaint alleges loss of liberty under the Fourth Amendment as the constitutional violation, I need not address other constitutional violations that could have supported a section 1983 malicious prosecution claim.

**5.** A recent decision interpreting *Gallo* indicated that whether restrictions on a plaintiff's

liberty constituted a "seizure as a consequence of a legal proceeding" should be based on the restrictions "placed on Plaintiff prior to his [court] hearing, particularly any restrictions imposed to guarantee his appearance at the second hearing." *Tyson v. Damore*, No. Civ. A. 03–5297, 2004 WL 1837033, at * 12–13, 2004 U.S. Dist. LEXIS 16596, at *39–40 (E.D.Pa. Aug.13, 2004).

er Shakoor had probable cause to arrest Brockington. Fourth, because the facts as presented by Brockington indicate that Shakoor may have intentionally falsified the finding of probable cause to arrest Brockington, it is a natural conclusion that she acted for a purpose other than bringing Brockington to justice. In addition to the genuine issues of material fact that remain as to each element of common law malicious prosecution, there must be a genuine issue of material fact as to whether Brockington was deprived of his constitutional right to liberty.

An arrest, as that of Brockington, would satisfy the seizure requirement in light of the *Gallo* holding that even less than "a full blown arrest" would qualify. *Gallo*, 161 F.3d at 223. It is clear from the trial transcript that Brockington had to attend court hearings including trial and arraignment. Brockington also alleges that his arrest violated his parole and led to his imprisonment for three months after being arrested. Because imprisonment is more of a limitation than posting bond, attending court hearings, contacting Pretrial Services, and limitations on travel, a reasonable officer in Shakoor's position would have understood the imprisonment of Brockington to be a seizure protected by the Fourth Amendment. *Cf. Torres v. McLaughlin*, 163 F.3d 169, 175 (3d Cir. 1998) (distinguishing pre-trial and post-conviction incarceration and holding that post-conviction incarceration is not a sei-

zure within the Fourth Amendment). If the facts are interpreted in the light most favorable to Brockington, Shakoor would have understood that her actions violated Brockington's clearly established right.

The set of disputed facts that precludes summary judgment on grounds of qualified immunity includes the following: 1) whether the criminal proceeding was initiated on the basis of Shakoor's knowingly false statements,[6] 2) whether Brockington and Shakoor discussed sex or sexual activity, 3) whether Brockington offered Shakoor money for sex, 4) whether Shakoor acted for a purpose other than bringing Brockington to justice,[7] and 5) whether Brockington had to attend hearings other than trial. These facts are material as to whether Shakoor had knowledge of facts that would warrant a prudent person to believe that Shakoor was committing a constitutional violation of Brockington's rights.

Therefore, summary judgment is denied as to defendant's defense of qualified immunity at this stage because there are outstanding issues of material fact relevant to that determination.

### B. Immunity Under the Tort Claims Act as to Plaintiff's State Law Claims

In the present case, the remaining state law claims against Shakoor are those for false arrest and false imprisonment,[8] and malicious prosecution. Shak-

---

**6.** Although this is not specifically alleged by Brockington, when all reasonable inferences are drawn in favor of Brockington, one can infer that the only basis for the prosecution could have been a statement by Shakoor, who was the key witness, and possibly the only witness to the conversation aside from Brockington. If one believes the evidence as provided by Brockington, then the testimony by Shakoor at the criminal trial was false. Shakoor presumably provided the same information to the prosecutor that she testified to at trial. Therefore, there is a material issue of

fact as to whether the criminal proceeding was initiated on the basis of Shakoor's knowingly false statements.

**7.** When all reasonable inferences are drawn in favor of Brockington, one can infer that if Shakoor knew only what Brockington said she knew, she could not possibly have thought she was bringing him to justice by representing that he offered her money for sex.

**8.** False arrest and false imprisonment claims are "nearly identical claims," and "are gener-

oor asserts that she is immune from suit on those claims based upon Pennsylvania's Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa.C.S.A. §§ 8541–8564.

Subject to certain exceptions, the immunity that the Tort Claims Act provides to the City of Philadelphia extends to employees of the City of Philadelphia insofar as the employees are subject to civil damages arising out of an "injury to a person or property caused by acts of the employee which are within the scope of his office or duties." 42 Pa.C.S.A. § 8545.[9] One exception to the immunity provided under the Tort Claims Act is that employees in an action "for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct" do not have immunity under section 8545. 42 Pa.C.S.A. § 8550. In determining when this "willful misconduct" exception provided in section 8550 applies, the Pennsylvania Supreme Court held that a different standard applies to police conduct than to the conduct of other employees. *Renk v. Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293

(1994). While "willful misconduct" may be equated with intentional torts in the context of conduct by City employees who are not police officers, in order to exclude police officers from the protection of immunity under the Tort Claims Act, the police officer's "willful misconduct" must be established in addition to the elements of an intentional tort. *Id.* at 75–77, 641 A.2d 289. The court in *Maiale v. Youse* interpreted *Renk* to require "not only that the police officer intended to commit the acts that he is accused of carrying out, but also that the officer understood that the actions he intended to take were illegal and chose to take the actions anyway." *Maiale v. Youse*, No. Civ. A. 03–5450, 2004 WL 1925004, at *11, 2004 U.S. Dist. LEXIS 17442, at *36 (E.D.Pa. Aug.27, 2004). Therefore, in order to demonstrate that the Tort Claims Act does not protect Shakoor in the present case, Brockington must demonstrate that there is a material issue of fact as to whether Shakoor's actions constituted "willful misconduct" for each of the alleged torts.

■■■ For Brockington's false arrest and false imprisonment claim,[10] the question is whether Shakoor "intentionally ar-

---

ally analyzed together." *Maiale v. Youse*, No. Civ. A. 03–5450, 2004 WL 1925004, at *12, 2004 U.S. Dist. LEXIS 17442, at *40 (E.D.Pa. Aug.27, 2004); *see also Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 110 (1971). The dissent in *Renk*, which does not conflict with the majority on this point, also states, "In the context of an arrest, an actor is liable for false imprisonment when he causes the false arrest of another person." *Renk v. Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 295 n. 2 (1994) (Montemuro, J., dissenting).

9. The Tort Claims Act provides governmental immunity primarily to local agencies, 42 Pa. C.S.A. § 8541, but because the City of Philadelphia is no longer a defendant in the present action, I will limit my discussion to the parts of the Tort Claims Act providing immunity to employees of the City.

10. Under Pennsylvania law, a false arrest is defined as "1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so." *McGriff v. Vidovich*, 699 A.2d 797, 799 n. 3 (Pa.Cmwlth.Ct. 1997) (citing Pennsylvania Suggested Standard Civil Jury Instructions at 13.04). The "elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Renk*, 641 A.2d at 293. Such detention is unlawful if it is a consequence of a false arrest. Brockington has successfully provided evidence creating a genuine issue of material fact as to whether there was probable cause for the arrest.

rested [a person] knowing that he lacked probable cause to do so." *Renk,* 641 A.2d at 293 (stating that the issue that must be resolved for a false arrest claim is whether the police officer "intentionally arrested [a person] knowing that he lacked probable cause to do so"). When all reasonable inferences are drawn in favor of Brockington, one can infer that if Shakoor knew only what Brockington testified that she knew, she must have intentionally caused the arrest of Brockington knowing that she lacked probable cause for his arrest.

For Brockington's malicious prosecution claim, the question is whether there is an issue of material fact as to whether the malicious prosecution was willful misconduct. There must be a material question of fact as to whether Shakoor intentionally committed the act of malicious prosecution,[11] in other words, whether she intentionally brought about Brockington's prosecution knowing that there was no probable cause. *Renk,* 641 A.2d at 293.[12] When all reasonable inferences are drawn in favor of Brockington, one can infer that if Shakoor knew only what Brockington testified that she knew, she must have brought about his prosecution maliciously knowing that there was no probable cause for his arrest or prosecution.

Therefore, summary judgment is denied as to defendant's defense under the Tort Claims Act at this stage because there are outstanding issues of material fact relevant to the determination.

## IV. CONCLUSION

Brockington does not oppose a finding of summary judgment as to Count III, Count IV, Count V, Count VI, and Count IX. Nor does he oppose summary judgment as to defendants Lynda Manley, Uraina Williams, and the Doe defendants in Count I, Count II, Count VII, and Count VIII. The remaining Counts are against defendant Shakoor.

Defendant moves for summary judgment as to the remaining Counts based on the federal qualified immunity doctrine and immunity under the Tort Claims Act. Plaintiff has demonstrated that there are disputed issues of material fact that preclude a finding of immunity at this stage in the proceeding. Therefore, summary judgment is denied as to defendant Shakoor in Count I—false arrest and false imprisonment under 42 U.S.C. §§ 1983 and 1988, Count II—malicious prosecution under 42 U.S.C. §§ 1983 and 1988, Count VII—false arrest and false imprisonment under state law, and Count VIII—malicious prosecution under state law.

### *ORDER*

**AND NOW,** this 27th day of January, 2005, after consideration of defendants' motion for summary judgment and plaintiff's response, it is **ORDERED** that the motion for summary judgment (Docket # 13) is **GRANTED IN PART** and **DENIED IN PART:**

● Summary judgment is **GRANTED** as to Count III, Count IV, Count V, Count VI, and Count IX.

● Summary judgment is **GRANTED** as to defendants Lynda Manley, Uraina Williams, the City of Philadelphia, and

---

11. The elements of common law malicious prosecution in Pennsylvania are the elements analyzed in the federal malicious prosecution claim brought under section 1983. Brockington has successfully made a prima facie showing of the existence of each element.

12. Although this case does not state what must be resolved for a malicious prosecution claim specifically, I am basing my statement of the required showing for willful misconduct on the elements of malicious prosecution in light of the Pennsylvania Supreme Court's description of the required showing for willful misconduct regarding a false arrest claim.

the "Doe" defendants, who are dismissed from this action.

- Summary judgment is **DENIED** as to defendant Tuwanda Shakoor's claims in Count I—false arrest and false imprisonment under 42 U.S.C. §§ 1983 and 1988, Count II—malicious prosecution under 42 U.S.C. §§ 1983 and 1988, Count VII—false arrest and false imprisonment under state law, and Count VIII—malicious prosecution under state law.