**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4629
_____

MARY BOARDMAN,
                                        Appellant

v.

CITY OF PHILADELPHIA;
BROWN'S SUPER STORE INC,
DBA Shoprite of Oregon Avenue;
OFFICER JAMES ARENTZEN, Badge No. 4681;
OFFICER ROBERT SMITH, Badge No. 3232
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-13-cv-01499)
District Judge:  Honorable Paul S. Diamond
Magistrate Judge: Honorable Timothy R. Rice
_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2016
_____

Before: FUENTES, SHWARTZ and BARRY, <u>Circuit Judges</u>

(Opinion Filed: August 11, 2016)
_____

OPINION[*]

---

[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

_____

BARRY, Circuit Judge

Mary Boardman commenced this action after she was arrested by Police Officers Robert Smith and James Arentzen at a ShopRite in Philadelphia, Pennsylvania. She raised claims for false arrest and excessive force, among others, against the Officers and the City of Philadelphia, as well as certain state-law claims against ShopRite. The District Court dismissed most of the claims on summary judgment, including the false arrest claims, leaving only the federal excessive force claim and the state-law false imprisonment claim against ShopRite for trial. The jury returned a verdict in favor of the Officers on the excessive force count,[1] and Boardman now appeals. We will affirm.

## I. BACKGROUND

On August 9, 2012, Mary Boardman was grocery shopping at the ShopRite supermarket on Oregon Avenue in Philadelphia. Surveillance video shows that she opened a box of parchment bags, examined the contents, placed the contents back in the box and then placed the box back on the shelf. Andrew Haenchen, a loss prevention associate at the store, believed this constituted theft and asked Boardman to accompany him to the loss prevention office.

---

[1] The jury also returned a verdict in favor of ShopRite on the false imprisonment claim, but the Court subsequently granted Boardman's motion for judgment as a matter of law with regard to that count. Following a trial held on damages, judgment was entered against ShopRite in the amount of $100,130.00. The parties later settled, and the Court dismissed the case against ShopRite.

Once inside, Haenchen and another associate, Herman Jackson, asked Boardman for identification and to sign a "loss prevention incident report" form, which included the following statement: "I was in ShopRite … and while there appropriated [certain articles] to my own use, without paying for or intending to pay for [the] same." (Appendix ("App.") 42.) Boardman acknowledged that she opened the box of parchment bags, rendering the same not fit for resale thereby, but refused to sign the form. In her view, the form contained a number of substantive inaccuracies and required her to confess to a crime she did not commit.

The police were subsequently summoned to the store, and Officers Smith and Arentzen were told that Boardman "opened up merchandise" and "put it back on the shelf without paying for it." (App. 53.) The Officers testified that, on hearing this, they concluded that she committed criminal mischief. They were also aware, though, that ShopRite would not press charges if Boardman agreed to sign the form as drafted. Boardman refused to sign without making certain changes, and became agitated when she was not permitted to do so.

Officer Smith testified that, following Boardman's final attempt to change the form, one of the loss prevention associates "nod[ded] [his] head," which Officer Smith interpreted to mean that ShopRite would, indeed, press charges. (App. 56.) Officer Smith then asked Boardman to stand for handcuffing, but she refused and backed away when the Officers attempted to stand her up themselves. The Officers forced Boardman

3

to the ground and Boardman resisted their effort to handcuff her, relenting only after Officer Smith threatened to use his Taser. With Boardman in handcuffs, Officer Smith called his supervisor to verify whether the accusations against her constituted theft or criminal mischief, and was informed that it was "not theft and that it would have been vandalism at best." (App. 60.) Boardman agreed to sign the ShopRite form, and was released with no criminal charges filed against her.

Approximately seven months later, Boardman filed a twelve-count complaint against the City of Philadelphia, Officers Smith and Arentzen, and ShopRite. She alleged a federal excessive force claim against the Officers (Count 1), a federal false arrest claim against the Officers (Count 2), a *Monell* claim against the City (Counts 3 and 4), state-law assault and battery against the Officers (Count 5), state-law false imprisonment against the Officers and ShopRite (Count 6), state-law false arrest against the Officers (Count 7), intentional infliction of emotional distress and conspiracy against all defendants (Counts 8 and 9), and corporate liability, negligent hiring, and negligent supervision against ShopRite (Counts 10-12).

On March 13, 2014, on cross-motions for summary judgment, the Hon. Paul S. Diamond (1) granted the City's motion in its entirety; (2) granted the Officers' motion on the federal false arrest claim, and the state-law false imprisonment and false arrest claims (leaving the federal excessive force claim for trial); (3) granted ShopRite's motion on corporate liability, negligent hiring, and negligent supervision (leaving the false

4

imprisonment claim for trial); and (4) granted defendants' motion on Boardman's claims for intentional infliction of emotional distress and conspiracy.[2] With regard to the state-law false arrest claim, the District Court concluded that, although it was "unclear whether Pennsylvania law authorized the Officers to arrest Plaintiff on probable cause for criminal mischief," (App. 8), the Officers were entitled to governmental immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-8550. Specifically, the Court held that, because the Tort Claims Act shields officers from liability in the absence of "willful misconduct," and because Boardman failed to establish that the Officers knew their conduct was illegal, the Officers were entitled to summary judgment. (App. 9.) Boardman's motion for reconsideration was denied for similar reasons. The remaining claims were tried before Magistrate Judge Timothy R. Rice, with, as relevant here, the jury returning a verdict in favor of the Officers on the excessive force claim. Boardman's timely notice of appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. The District Court's decision on summary judgment is subject to plenary review. *See S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013). Jury instructions also are subject to plenary review, *United States v.*

---

[2] Boardman abandoned on appeal her claims against the City and her claims against all defendants for intentional infliction of emotional distress and conspiracy. She abandoned at trial the assault and battery claim against the Officers.

5

*Johnstone,* 107 F.3d 200, 204 (3d Cir. 1997), but the wording of the instruction, *i.e.*, "the expression," is reviewed for abuse of discretion. *See United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995). Similarly, we review evidentiary rulings at trial for abuse of discretion. *See United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001); *see also Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005) (concluding that attorney's allegedly improper statements in summation did not warrant a new trial).

## III. ANALYSIS

Boardman presents four arguments on appeal: (1) the Officers demonstrated willful misconduct in connection with her arrest and therefore are not immune from liability; (2) the jury was erroneously instructed that handcuffing "without more" will never constitute excessive force; (3) Boardman's objection at trial regarding the Officers' legal right and obligation to arrest her should have been sustained; and (4) she was prejudiced at trial by her inability to inform the jury that the arrest was, in her view, illegal.

### A. Summary Judgment: False Arrest

Under Pennsylvania law, the tort of false arrest requires a showing of either "(1) an arrest made without probable cause[,] or (2) an arrest made by a person without privilege to do so." *See Renk v. City of Philadelphia*, 641 A.2d 289, 295 n.2 (Pa. 1994) (Montemuro, J. dissenting). "[W]hether an officer is authorized to make an arrest depends initially on whether state law authorizes such action." *Commonwealth v.*

6

*Williams*, 568 A.2d 1281, 1284 (Pa. Super. Ct. 1990) (emphasis omitted).

The District Court rightly concluded that, under Pennsylvania law, the Officers had probable cause to believe Boardman committed criminal mischief (*i.e.,* damage to property), but that they lacked probable cause to arrest her for theft. *Compare* 18 Pa. Cons. Stat. § 3304(a) ("A person is guilty of criminal mischief if he … intentionally or recklessly tampers with tangible property of another so as to endanger person or property … [or] intentionally damages real or personal property of another") *with* 18 Pa. Cons. Stat. § 3929(a)(1) ("A person is guilty of a retail theft if he … takes possession of, carries away … any merchandise … with the intention of depriving the merchant of … such merchandise without paying …."). That distinction is legally significant because, unlike the crime of theft, criminal mischief is categorized as a "summary offense" under Pennsylvania law and requires more than just probable cause to justify arrest.

The parties hotly dispute those requirements. Boardman points first to Rule 400 of the Pennsylvania Rules of Criminal Procedure, which deals exclusively with "Proceedings in Summary Cases," and provides that "[c]riminal proceedings in summary cases shall be instituted either by: (1) issuing a citation to the defendant; or (2) filing a citation; or (3) filing a complaint; or (4) *arresting without a warrant when arrest is specifically authorized by law*." Pa. R. Crim. P. 400 (emphasis added); *Commonwealth v. Bullers*, 637 A.2d 1326, 1328-29 (Pa. 1994) (holding that a "court may not permit a warrantless arrest for a summary offense when [the] legislature has not so provided").

7

Because neither the criminal statute at issue nor any other municipal code provision authorizes an arrest without a warrant for criminal mischief, Boardman argues that she was falsely arrested as a matter of law. The Officers maintain otherwise. They urge, as the District Court first concluded, that it is "unclear whether Pennsylvania law authorized the Officers to arrest [Boardman] on probable cause for criminal mischief outside their presence," (App. 8), citing recent federal cases in support. *See Huff v. Cheltenham Twp.*, 2015 WL 4041963, at *9 (E.D. Pa. July 1, 2015).[3]

We need not resolve this apparent dispute on appeal because, in the absence of willful misconduct, the Officers are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). To conclude, as Boardman urges us to do, that the Officers acted with willful misconduct, a statutory exception to PSTCA immunity, we must find "not only that the [Officers] intended to commit the acts that [they are] accused of carrying out, but also that [the Officers] understood that the actions [they] intended to take were illegal and chose to take the actions anyway." *Maiale v. Youse*, 2004 WL 1925004, at *11 (E.D. Pa. Aug. 27, 2004); *see also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (describing willful misconduct as "a demanding level of fault" akin to "intentional tort") (internal quotation marks omitted); *In re City of Phila. Litig.*, 158 F.3d

---

[3] The confusion stems from the interpretation of *Commonwealth v. Elliott*, 599 A.2d 1335 (Pa. Super. 1991) by the District Court, as well as by the court in *Huff*, interpreting *Elliott* to stand for the proposition that a "police officer has authority for warrantless arrest for summary offense if he has probable cause." (App. 8.) Boardman claims this interpretation was in error, and that *Elliott* stands only for the proposition that an officer may issue a *citation* for a summary offense committed outside the officer's presence.

723, 728 (3d Cir. 1998) (explaining that the Pennsylvania Supreme Court's decision in *Renk* "require[es] a subjective standard of willfulness that calls for a showing of an intention to do what is known to be wrong"). In the context of this claim for false arrest, Boardman must show that the Officers "'intentionally arrested [her] *knowing* that [they] lacked probable cause to do so.'" *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 571-72 (E.D. Pa. 2005) (quoting *Renk*, 641 A.2d at 293) (emphasis added).

Boardman's theory of willful misconduct is novel but unpersuasive. She argues that the Officers arrested her for refusing to sign the form, not because she committed criminal mischief. She submits that a reasonable juror could conclude as much based on the testimony presented, and that such a juror could likewise conclude that "using [an] arrest to coerce a confession" constituted willful misconduct. (Blue Br. at 27.) In support, she points to the deposition testimony of Officer Smith, in which he stated, "[A]s she was changing [the form], that's when we decided to make the, we made the decision to place her, attempt to place her in handcuffs because she was changing it." (App. 56.)

To reach Boardman's conclusion from this evidence, however, would require us to interpret Officer Smith's testimony in a manner unreasonably favorable to Boardman and to ignore contrary testimony from the other parties. Officer Smith testified that he was informed upon arrival that Boardman "opened up merchandise" and "put it back on the shelf without paying for it," but that ShopRite would not press charges for that offense "if she signs [the loss incident form]." (App. 53.) Similarly, Officer Arentzen testified that,

9

after Boardman refused to sign the form in his presence, the Officers informed her that "if she didn't want to" sign it they were "going to have to place her under arrest" for "damage to property." (SA17.) This approach was consistent with both ShopRite's policy regarding theft or misuse of store merchandise and Officer Arentzen's practice of not arresting an accused despite probable cause to do so where the purported victim declines to press charges.

Boardman offers no grounded explanation as to why the Officers would have wanted to arrest her solely for refusing to sign the form itself, and she provides no reasonable basis for inferring from the testimony anything other than that Officer Smith was summoned to arrest her for damage to property—*i.e.* criminal mischief—and that he elected to do so after the loss prevention associates signaled their intent to press charges. She also fails to offer any evidence or principled argument suggesting an absence of probable cause and, most importantly, does not identify any basis to refute or undermine the Officers' belief that they were authorized to make an arrest. *See Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 600-01 (3d Cir. 1998) ("'Willful misconduct,' …, requires evidence that the defendants actually knew that their conduct was illegal."). Officer Smith testified that "criminal mischief is one of the offenses that you can make an arrest for without a warrant" as long as there is a witness or admission, (App. 64), and Officer Arentzen testified that officers have the right to arrest someone without a warrant for a summary offense if "they admit to it." (SA21.) Boardman thus

failed to provide any basis for inferring that the Officers believed the arrest was illegal, and we conclude that there is no genuine factual dispute regarding their purported willful misconduct.

## B. Jury Instruction: Handcuffing "without more"

Boardman also argues that the Magistrate Judge erroneously instructed the jury in connection with the excessive force trial, and specifically challenges the instruction that "handcuffing without more" cannot constitute excessive force. The instruction was as follows:

> Now in determining whether Officer Smith or Arentzen's actions constituted excessive force you must ask whether the amount of force used was the amount a reasonable officer would have used under similar circumstances in making an arrest. **The act of handcuffing without more does not constitute excessive force. Rather, you should consider all the relevant facts and circumstances leading up to the time of the arrest that Officer Smith and Officer Arentzen reasonably believed to be true at the time.** You should consider those facts and circumstances in order to assess whether there was a need for the application of force and the relationship between the need for force, if any, and the amount of force applied.

(A95) (emphasis added). Boardman claims that the instruction was contrary to our decision in *Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004). We disagree.

The plaintiff in *Kopec* alleged that "Officer Tate placed handcuffs on him that were excessively tight and failed to respond to [his] repeated requests for them to be loosened." *Id.* at 777. He alleged further that "it took Officer Tate ten minutes to loosen

11

the handcuffs despite the severe pain they were causing and his efforts to secure their release." *Id.* We held that such facts would constitute excessive force if proven at trial. *Id.* Magistrate Judge Rice discussed that decision with counsel before instructing the jury, and interpreted it to stand for the proposition that "handcuffing could constitute excessive force if there's complaints, obvious signs of discomfort, damage that requires medical attention, things of that nature." (A17.) He agreed that there are "circumstances where [handcuffing] could" constitute excessive force, but cautioned that the jury must nonetheless look at all the relevant circumstances—"I don't want the jury returning a verdict of excessive force merely because the officers handcuffed the plaintiff. Because I don't think … that was the theory that you charged the case on, or that you filed the [c]omplaint on." (*Id.*)

Magistrate Judge Rice properly acknowledged that the act of handcuffing may, in certain circumstances, constitute excessive force—including, but not necessarily limited to, those presented in *Kopec*. And, by instructing the jury to consider "all of the relevant facts … leading up to the time of the arrest," he accounted for the possibility of such circumstances, while leaving it to the jury to assess whether the force employed was reasonable in light thereof. (A95.) Boardman has not shown that the specific instruction of which she complains—that "handcuffing without more does not constitute excessive force"—misled the jury into ignoring the possibility of other exacerbating factors.

### C. Trial Objection: "Right" to Arrest

12

Boardman next claims that, throughout defense counsel's closing, he repeatedly told the jury that Officers Smith and Arentzen had a legal right to arrest and that these purported misstatements of law warrant a new trial. To find as much, we must conclude both that the argument was "so gross as probably to prejudice" Boardman's likelihood of success and that "the prejudice [was not] neutralized by the trial judge before submission of the case to the jury." *United States v. Somers*, 496 F.2d 723, 738 (3d Cir. 1974) (citation omitted).

Even assuming that Boardman was somehow prejudiced by these statements,[4] Magistrate Judge Rice's instruction neutralized any possibility that the jury would be influenced thereby. Boardman's argument is that the grade of her offense was so minimal that it could not legally warrant an arrest, let alone the use of force attendant thereto. This concern was properly accounted for by the Court's instruction that the jury consider "the severity of the crime at issue [and] whether [Boardman] posed an immediate threat to the safety of the officer or others." (A95.) The jury was free to consider whether the nature of her offense rendered the force applied more or less justifiable. Magistrate Judge Rice did not abuse his discretion in rejecting Boardman's argument.

### D. Prejudice

Finally, Boardman argues that a new trial is warranted because her excessive force

---

[4] For the reasons outlined in the following section, we conclude that she was not.

trial would have been different if the District Court had not "erroneously" dismissed her false arrest claim against the Officers at summary judgment. This argument ignores the fact that the lawfulness of Boardman's arrest does not bear upon her excessive force claim. *See Romero v. Story,* 672 F.3d 880, 890 (10th Cir. 2012) ("[I]f the district court concludes the arrest was unlawful, the court may not automatically find any force used in effecting the unlawful arrest to be excessive. Instead, the district court must then analyze the excessive force inquiry under the assumption the arrest was lawful.") (citing *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc)); *see also Snell v. City of York*, 564 F.3d 659, 672 (3d Cir. 2009) (rejecting argument that "the force applied was excessive solely because probable cause was lacking for his arrest" as well as "similar efforts to bootstrap excessive force claims and probable cause challenges.") Boardman suffered no prejudice by virtue of her inability to tell the jury that the arrest was unlawful, and she otherwise presents no ground with any merit for a new trial.

## IV. CONCLUSION

The Orders of the District Court will be affirmed.

14